Kerr v. Morrison v. Snyder May it please the Court, Michael Sussman, Sussman & Watkins in Goshen, arguing for the appellant. Good morning. This is an appeal from a grant of summary judgment, Your Honor, and I do want to spend a couple of moments on the facts because I think they're important to understand our position. On November 4, 2011, Mr. Kerr, who rented space at 183 Main Street in New Paltz, returned from a lunch break to his office. He parked in a parking lot and there was a postal truck there. He noticed the postal gentleman making contact with him, looking at him with a package. He went over, ultimately was ascertained the package belonged to someone Mr. Kerr believed was a tenant in the building and had previously accepted mail for and packages. Mr. Kerr took it, signed a line with his own name on it, and began walking back to his building. The Court has to recognize that the front of the building is a staircase, and there are three separate entrances once you ascend the steps. Mr. Kerr's is on one side, there's a tenant on another, and a real estate broker in the middle. Mr. Kerr, before he was able to bring the package to the tenant, as he had indicated verbally he was going to do, was apprehended by the tenant. Scalia. Where was the apartment? What is the apartment? The apartment's with the tenant's entrance, Your Honor, which is where Mr. Kerr said he was going. It's one of the three entrances on the right, on the left, actually, as you're looking straight ahead. The Postal Inspectors had already before them a series of three. This was the third in a series of three extraordinarily suspicious mailings from California. There was a whole series of facts about the fact that they were consecutive numbers, but they were mailed from three different places, or at least two different places, that in each case, the last name of the sender matched the last name of the addressee. All three of them mailed to the same address. None of them associated with Mr. Kerr. Just a second. Sorry. All three of them mailed to the same address. And that pattern made it almost certain that the identification of the addressees was fraudulent. It would be just astonishing if this had happened with true addressees, with these three different mailings from three different places, consecutive numbers. It just dripped with fraudulent. So when your client goes to the postal truck and says, oh, that, what's his name? What's the name of the guy? Sean Weber. Sean Weber, Your Honor. Sean, he's the guy who lives upstairs. That seems to me to create very high probable cause that he is lying to a federal official. Why is that not the case? Well, it seems to me, frankly, to create none. Here's the problem. In this particular instance, the verification with respect to Mr. Kerr would occur with respect about 20 seconds after he was apprehended, when Mr. Kerr either brings that package to the staircase of the tenant or does not, or takes possession of the package and goes into his office. If the pattern of conduct shows in a highly persuasive way that these series of packages all mailed to the same address are being mailed to phony name people and Kerr, who is a true name person at that address, says, oh, that's the guy who lives upstairs. I'll take it for him. Why isn't that probable cause that he is lying? This is a summary judgment motion. Okay? On a summary judgment motion, Your Honor, you cannot, as far as I understand Rule 56 and the rules, take the position of the defendant contrary to the sworn testimony of the plaintiff. The plaintiff. I believe it is. Whether it showed probable. It doesn't establish probable cause, because Mr. Kerr had nothing whatsoever to do with the prior packages, and there was no knowledge on anyone's part of the name Don Kerr. I didn't say that. Well, that's a premise. I just asked you why it wasn't probable cause that he was lying when he asserted that Sean is a true person who lives upstairs, when there is enormous amount of evidence that these three people who have had the packages addressed are fictitious. Well, the point is, he understood there was a Sean, and he had testified and gave testimony, which is unrefuted, that there was a Sean who lived upstairs who he previously had accepted packages and mail for. So on this motion, to simply say it establishes probable cause because there were packages that had come to that location, which have nothing in this record ever to have done with Don Kerr, who is the probable cause is still. It's not that he's lying. How can you come to the conclusion he's lying when he's asserting? That's a jury question, frankly, whether he's lying or not. And probable cause itself here is a fact-driven issue, which should have been determined by a jury, not the judge. The judge. I agree. So the question is not, what did your client subsequently say, but what were the facts known at the time of the initial stop? And whatever your client may have told the officers, the package and their knowledge of the prior deliveries meant that whoever accepted the package was someone they could stop to inquire further of. Why is that not a proper way to look at it? Because the stop was premature. And I think alighting that issue here is very, very important. In about 20 seconds from when they, in fact, apprehended Mr. Kerr. I understand we're going to get to the handcuffing. No, no, it's not the handcuffing. And before we get to that, why wasn't it why wasn't there reasonable suspicion given prior packages that were suspicious, this one was the same way, to have reasonable suspicion to stop whoever was prepared to sign for that package? Because that individual made clear explicitly his intent to the postal individual from whom he took the package. His intent, as stated, was to go with the package and deliver the package to the tenant he believed it was. So at that point you don't know. Except that and we keep going, what, you have other arguments? Well, I'm not sure how you can't, frankly, I don't know, okay, you're saying you don't accept it, I don't. I mean, if you accept it, that's the end. I mean, it seems to me, I, I, sorry? If we do accept it, that's the end of the government's argument. If we don't, though, I know you have further arguments, so I want to give you a moment. Thank you. Look, the further arguments are very simple. Nothing that thereafter happened gave any enhanced cause, probable causes, as you indicate, the next standard, to relate Mr. Kerr to the criminal activity. If a police officer hears from an individual that they're about to engage in an entirely innocent transaction, which here would have been I'm bringing the package to the person I believe is the recipient of the package, and before the person is allowed to do that, they are interdicted, so you're not allowing the person to actually vindicate their own innocence situationally. And then you simply say, well, now, now it is probable cause. So a dog comes and smells it's marijuana. That doesn't add anything with regard to the matter. Sorry, Judge. I'm not sure I understand just that. Sure. The sniffer dog is, from your point of view, is irrelevant. Totally. Okay. All the sniffer dog did was to make it clear, if it had to be clear, that it was drugs. But that doesn't matter to your case. It doesn't matter whatsoever. In fact, they get they go into my client's office, they get the safe unlocked, they get his computer, they make determinations that there's nothing in the office having anything to do with drugs. Okay, so here we are. So now you're taking Mr. Kerr, the president of the school board, you're handcuffing him, and you're bringing him over to the precinct and you're charging him with an offense, which, of course, was no true build, because it's a frivolous arrest. Let me ask you why, because then we come back to his accepting the package. Sure. Your client had an innocent explanation for it. He's accepting it for another person. But the law is pretty clear that the fact that there's an innocent explanation for something doesn't necessarily defeat probable cause. The undisputed fact is that he signed for the package. He signed for it disavowing that it was for him. Right. But nevertheless, why isn't that enough for probable cause? Because, again, taking it out of an abstract – I recognize that there's a practical thing going on on the ground and there are abstract legal principles, and I know we're trying to mesh the two. What I'm trying to explain to the Court is, in this particular situation, where there is a building, and that building has a number of occupants, and Mr. Kerr has stated, and there's no refutation of this, that he has a history of taking packages and mails for a number of those individuals and bringing them to the door and leaving them at their door. And when that would have occurred, or not occurred, if it didn't occur, obviously there's no case. But had it occurred, in 20 seconds, you would have known whether Mr. Kerr was lying or not lying. To go to your point about lying, Judge LaValle would say there's a significant chance he's lying. If he's lying, he's not going to take this. He doesn't know there's any police activity. Scalia. Your argument would be substantially stronger if there had not been the previous packages. If there was just the first time it happened, and the postal inspectors were suspicious because the package was wrapped, and they came and they said, oh, there's a – here's a package, when he went to inquire, and he's, well, this is probably one of the other tenants, all you can give it to me, that would be a very different case. I don't think so, because you still need the association in ab initio with Mr. Kerr. And you don't have any such association other than his entirely innocent explanation, which either is true or isn't true. I acknowledge to the Court it might not be true. They don't know whether it's true or not, but they're going to know. See, the first postal, just to play it out, Mr. Kerr doesn't know this is a sting. Scalia. Supposing that the inspectors had done some additional sleuthing, and they had determined that there is no Sean living upstairs, and they knew, they knew conclusively that this was a fictitious name, or at least that there was no such person at that address, and he then came and said, oh, that's the guy who lives upstairs, I'll take it for him. Would that be a – would that be probable? You'd have to go a little further. You'd have to go a little further. Wasn't there at that moment or had not been there in the time period, he'd been there 15 years. He indicates he's taken packages for Sean before. Had they done a check of postal records and determined that that hadn't been true, maybe they would have something, but they didn't. Here's the other point, though, I just want to be clear on. In this particular situation, just so we have it before us, Mr. Kerr doesn't know this is a sting operation. Mr. Kerr has taken a package from a single individual. That's what we know. Until the second one, Mr. Moriarty, comes, there are no police officers there. There's nobody else there. Mr. Kerr is walking with the package. If the package is Mr. Kerr's package, and he's pulled this fast one and he's gotten this delivery of 8 pounds of marijuana from California, he's taking the package and one would expect he'd walk to his office with the package. Mr. Kerr doesn't he we don't know whether Mr. Kerr was going to do that precisely because they didn't let the situation materialize to determine whether there was reasonable suspicion of probable cause. They precipitately acted with no reason. That's the point. I know you want to reserve time for rebuttal, so let's hear from your adversaries. Good morning. May it please the Court. Karen Fulster-Lesbron, Assistant United States Attorney for the defendants James Morrison and Robert Moriarty. The problem with the appellant's argument is twofold. Initially, he claims that the mere assertion by his client that this Sean Webber lives upstairs and I'll take the package and deliver it to him, the appellant would have us believe that that assertion in and of itself defeats reasonable suspicion and probable cause. The problem, as Your Honors have already pointed out with that assertion, is that the officers have already formed a reasonable belief that Sean Webber does not exist. Based on what? It wasn't clear from the record. They searched the law enforcement databases and I concede that the record is a little bit loose on what those databases were. The testimony of Agent Morrison was that they have databases that will indicate whether that name has a known association with the address. In addition, they have the pattern that this is the third of these highly suspicious packages, which in each case are mailed, although they're in sequence, they're mailed at different dates from different places, and in each case, the last name of the sender is the same as the last name of the addressee to make it look as if it's a family, mom sending a package to son at school in New Paltz. Exactly, Your Honor. Additionally, they ran similar searches on the name of Ben Parker and Stacey Lancier, which were the other recipients, also no known association to that address, and they also, because this is a college town and it is an apartment, they ran the name Sean Webber through the SUNY New Paltz database and determined that he was not a college student at SUNY New Paltz. So they now have, at the very least, a reasonable belief that this is the third package, that two prior packages were sent to what they reasonably believe to be fictitious names and were accepted by somebody at that address. They were all packaged in similar fashion. Correct. Similar weights, all sent by express mail at very high postage rates, somewhere between $130 and $180 each to mail each of these packages. They came from the same area of Northern California, which is considered a source city, and as you've stated, at least two of them had sequential labeling, indicating that the labels were taken from the same postage, from the same post office at the same time, although they were sent from different post offices. So somebody came and grabbed those labels. From different post offices on different dates. Correct. From different cities. And so, before they even show up, they reasonably believe that somebody at that address has been accepting packages, suspicious packages, sent to fictitious names, and that if anybody at that address accepts that package, it is most likely the intended recipient. And that belief, whether it is true or not, was perfectly reasonable for them to hold. So the person accepting the package, it's accepting the package, in this case, with the statement that that's the guy who lives upstairs. Yes. And it was an immediate recognition, oh, that person, he's one of the students upstairs, I'll take it and give it to him. Appellant makes the point that he testified that there had been a Shawn that he accepted packages for, but if you look at that testimony in the record, he testified it had been several years since the person who he remembers as Shawn had lived in the upstairs apartment. In any event, that's after the fact. That is after the fact. Let me ask you, assuming we were to accept your argument about the stop, could you address both why the dog sniff is done after the fact rather than before the fact? You all had possession of this package. And it strikes me as curious that you didn't try to discern whether it would cause a dog to alert before you tried to deliver it. And then second, if you could address the handcuffing, particularly in light of our decision in Bailey. Certainly, Your Honor. On the first point, I agree, perhaps it would have been the better practice for the agents to have conducted the dog sniff prior to the controlled delivery. The record does not establish the reasons why that was not done. It may have been the better practice for it to have been done that way, but the fact that it was not done that way does not defeat the probable. It was the police dog. I believe there's testimony in the record that the postal agents did not have a dog sniffing, a drug sniffing canine available to them. It was the SUNY New Paltz police who had the dog. I could make an argument, I could posit or speculate that the package was in the possession of the federal agents and the dog was in the possession of the locals, but I don't want to start speculating on reasons for that that are outside the record. Correct. But the mere fact that the sniff was not done prior to the delivery, it just doesn't defeat the fact that they had probable cause, the detention in the intervening time from when they originally detained him until the dog alerted was incredibly brief and very reasonable. The second thing you asked me to address was the handcuffing. Agent Moriarty was the first to confront Kerr and at the time of the confrontation was alone. He knew that there were New Paltz police officers stationed around the corner to provide backup, but he was not wired. He wasn't certain if they were on the way, had gotten the message that the package had been delivered. And the first time he directed Kerr to put the box down, he did not comply. So you had a single officer facing this suspect alone. You had an initial act of noncompliance. He does not know if this person is armed. He believes that this person has now just accepted a box, which he thinks contains drugs. And he frankly has no idea how he is going to react to being confronted by a federal agent. I just want to be sure I understand. A federal agent delivered what he thought was a package of drugs with no backup? Well, the backup was around the corner and he expected that it would be there momentarily, but he couldn't be certain. And it was there momentarily, but until they did show up, he knew that they were around the corner and that they were supposed to be coming. But until they got there, he was alone. At the second point I would make on that, Your Honor, is I would refer you to a decision that this court made just in July of this year. I believe Your Honor was on the panel in that decision, that was the Compton decision, 830 F. 3rd 55, in which similar scenario, you have border patrol agents make an investigatory detention at a vegetable stand close to a border checkpoint, and then see something in the car. They briefly detain the individuals in the car while they get somebody from the checkpoint to come with a dog and do the sniff. They handcuff the two individuals while the sniff is being conducted. This court says that the investigatory detention leading up to the dog sniff was reasonable and quote, the fact that the agents placed the brothers in handcuffs during the brief canine sniff does not alter our analysis. All you need in any event in this case is that there have been no clearly established prior authority that what they did in any of these circumstances was illegal. That's correct for the qualified immunity analysis, Your Honor. And then finally, well... Before you finally go back to the dog for a moment, I'm not quite sure I understand under the specific facts here why the arrival of the dog matters, and indeed your adversary said it didn't. You already, the arrival of the dog made it absolutely clear that there were drugs in the package, right? That's all it did, is that right? Correct. And therefore, the question is, given all the other circumstances, including the fact that it was packed the way marijuana is packed, did they really need the dog or was that just changing from 99% to 100%? I think that it was, Your Honor. It's the government's position that there was probable cause from the moment that Mr. Kerr accepted, took possession of the package, but... I'm sorry? From what probable cause for what crime? To accepting, possessing marijuana, once he took possession of the package. Did he have a basis for thinking that the package contained marijuana? The agent's experience, and they certainly, in their affidavits have... How many other suspicious packages had marijuana in them? Well, the... How many? Excuse me? How many of the other suspicious packages had marijuana in them? This other suspicious packages that went to this particular address? Any of them. I'm... Well, they know for... For the record, you talked about one package that was recovered with marijuana. Correct. But you spoke about a number of suspicious packages. So, do you... Did you not know what the other packages contained or did you find out that they didn't have marijuana? They... There was a reasonable belief that they all contained marijuana. The one that had been... Probable cause. I mean, this is one of the reasons I asked you about the failure to do the drug... The dog sniff before you delivered, because then there would have been no doubt, perhaps, or at least you could have argued, that there was probable cause to think a recipient had accepted drugs. But you're saying that just based on the suspicious packaging, you had enough to arrest someone  Well, it was a multitude of factors. Is the answer you think you had probable cause at that point, before the dog sniff? Yes, Your Honor. And at least arguable... At least arguable probable... You may not argue this, but even assuming you didn't have probable cause as to a narcotics offense without having done more to confirm likely marijuana in there, why didn't you have probable cause? Isn't it a fact that you had probable cause of a false statement to a federal agent, when you had so much indication of the falsity of the name, and Kerr said to you that that's a person living upstairs in circumstances where the previous packages had all been delivered to this same address? It's certainly probable, and the officer did in fact believe that Kerr was lying to them when he indicated that he knew this person. And this person lived upstairs when they believed it to be a fictitious person. Probable cause simply requires suspicion that criminal activity is afoot. And whether or not they were convinced that it was actually marijuana in the box, they certainly believed that criminal activity was afoot. Probable cause is reasonable suspicion to think that criminal activity is afoot? I'm sorry. What was... I'm sorry. You just said probable cause, and then I think you stated the standard for reasonable suspicion. My apologies. You still... I don't think you ever quite got to answer what happened to and what were the previous two packages that were similar to this. The two packages that went to 183 Main Street, we just know that they were sent and delivered. They were discovered after the other arrest of the other defendant, so we don't know what was in those packages. To address your question, Judge Raggi, about why we thought that it was marijuana, what the agents have said, that in particular the excessive taping around the edges of this box and the box that was delivered to the other address in which an arrest was made is a very common pattern, in particular with packages containing marijuana, because it's done that way to mask the odor. And then the final point that I'm not sure that I was able to make on the handcuffing issue is that while there is some cases that say handcuffing converts to an arrest, that is a totality of the circumstances analysis. Bailey has said you have to have the basis to think that the person presents a danger if you're handcuffing on reasonable suspicion at a stop, right? Bailey is decided after the events here, but I'm not sure what you're arguing to us when you're saying totality of the circumstances. The circumstance that Bailey identified as determinative is, is there a risk of flight or danger? Right. Well, and that was decided after these facts, and going back to the qualified immunity analysis, what was clearly established at the time that these officers acted, you know, decided after these facts. But in there, it's not held to confer detention to an arrest, it's simply merely by the fact of handcuffing. And the totality of the circumstances analysis has to consider the number of officers involved, which at the time of the handcuffing was only one. The amount of force used, which other than the handcuffing, was none. Is that right, furthermore, that the officer who put the handcuffs on, who was for the person was, the person represented himself to be Kerr, the tenant of the, but the officers didn't know that. The officers don't know where that is indeed who the person was, as opposed to could have been anybody. And it wasn't necessarily the president of the school board who represented himself to be such. Right. All they knew that it was a person who had taken possession of a suspicious package and who did not put the box down the first time a federal agent told them to put the box down. Thank you. I think I can almost say good afternoon. My name is Eric Kurtz. I'm here on behalf of the New Paltz Appellees. As far as our official clock here, yeah. Go ahead. Just a brief discussion about the facts and the standards. And we are talking about reasonable suspicion and arguable probable cause in the mind of a reasonable police officer. Appellant argues that had there been a 20-second delay, we would have known where Mr. Kerr was going to take that box. Well, my clients are in the unique position that they weren't there. They were around the corner. They were back up. They were to arrive after the scene. By the time they arrived, Mr. Kerr was already handcuffed. He was either on the front porch or at the steps to the front porch. So they weren't in a position to know any of that. The only thing they knew when they arrived was that, oh, jeez, this is the president of the school board and he's asking us to go inside. Let's let him go inside. And I wanted to address specifically the appellees Snyder and Butler and what their role was on this particular day and what minimal role they had and lack of knowledge of the whole operation. Snyder, by all accounts, knew very little about the controlled delivery. He was just asked to join the group as an additional body. Appellant argues in his brief that, oh, Snyder was part of this grand conspiracy. He was part of this meeting. The only one who actually mentions that Snyder was there at this little short brief meeting at the New Paltz Police Department was Morrison. And the only thing Morrison really said was that, no, the discussion about how this was going to play out was between Lucchese and myself, not Snyder. With regards to Butler, again, he had very little knowledge of what was going on other than the fact that he was there to be backup. He came around the corner after being advised that possession had been taken and the individual was in custody. He arrives. What does he do? He does take custody of Mr. Kerr, takes him into Mr. Kerr's office pursuant to Mr. Kerr's request. Does he interrogate him? Does he do anything violative of the Constitution during that time frame? No, he does not. There's no dispute with respect to that. They talk about family. They talk about community because Mr. Kerr does not want to speak about the package in any way. So the argument by the appellant that the appellees jumped the gun, I submit, has nothing to do with the New Paltz appellees. They arrive. They rely upon what has been done by the postal inspectors and go from there. The other issue that hasn't really been discussed today so far is the and I just want to address that briefly because it is addressed by the district court. There's nothing in the record to establish that a request was made by Mr. Kerr or his attorney for return of the laptop until Chief Snyder received an e-mail on May 25, 2012, requesting that it be returned. Happened to be that Chief Snyder's father died that day. Six days later, Mr. Kerr goes to the police department, asks for his computer back. It's given to him. Had the appellant, in opposing the motion for summary judgment, simply given an affidavit from Andrew Kossover, the criminal attorney representing Mr. Kerr, that, oh, I had spoken to Chief Snyder or I had spoken to someone and asked for it and they refused to give it back, well, at least that would have led to a question of fact. But there is a question. No true bill by a grand jury does not establish innocence and while that may have been the end of the line as far as these prosecutors were concerned, there's no legal obstacle to their representing to another grand jury if they were so inclined. That's true. Which would have justified retaining possessions. That's true. And that would be all that I really have to say unless the court has any other questions. Thank you. Thank you very much. Again, this is a motion for summary judgment. The record demonstrates that there was a concerted plan agreed to by all involved including Lucchesi, Snyder, and Butler, according to Morrison. That's the testimony. It's detailed in the record extensively in the briefs. There are citations to the joint appendix to arrest whoever took possession of the package. That's the agreement that they made, number one. So to say that the New Paltz people weren't involved in that, again, is not true to the record taken most favorably to the appellant. Number two, they knew backup was immediately arriving. That was the plan. The plan was that the gentleman who gave the package was going to be the observer. He had a radio communication immediately with the gentleman who were around the corner and they were coming and they came within seconds. So this notion of safety, a public safety defense, there was no public safety implicated here, facts taken most favorably to the plaintiff. It doesn't exist. It's a fabrication. The issue with regard to the handcuffing is correct. That's what it's argued to. They say there's a public safety exception. Now, with regard to the packages, the judge ---- goes to something quite different. It usually goes to Fifth Amendment issues. I'm not sure. I mean, there has to be some reasonable basis to think that there's a danger or a risk, but even if this weren't enough, why wouldn't this be a reason of unqualified immunity, at least certainly before Bailey? The arresting officers immediately understood that Mr. Kerr's office was there. He had indicated his office was there to the postal people from the beginning. So the issue that they didn't know who he was, again, the evidence taken most favorably to him is that he made clear who he was, that he had an office there which was standing right in front of them. When Judge LaValle says, well, he may have been anyone, that's not the record most favorably to them, he could have been anyone. But the ---- Scalia, you know, when the issue is whether there was probable cause or reasonable suspicion, you're simply wrong on the law when you argue the proposition that we're required to accept as truth. I mean, the truth is really irrelevant. The question is whether they had probable cause or reasonable suspicion. On whose statement of the facts, though? It's never irrelevant. There are two different statements of the facts. Taking into account everything that was said on the scene, accepting the plaintiff's version of what he said at the scene. No, excuse me. Not that. You're citing the summary judgment standard. Yes. It has to be viewed in the light of what probable cause and reasonable suspicion demand, and there the law has made clear that they do not have to accept every innocent explanation to defeat probable cause or to defeat reasonable suspicion. Judge, I understand they don't have to accept everything. That is clear. But in this particular situation, all you've heard about ---- Your argument is really a very silly argument. I mean, if they arrest somebody and there's a suitcase there and they open the suitcase and they find tons of drugs in it and guns and all kinds of things like that, your argument is if he says, gee, I've got nothing to do with this suitcase, this suitcase was just given to me by a fellow who passed by and said to me, will you hold this for me for five minutes while I run to get some cigarettes, they have to accept that and they don't have probable cause. Absolutely. That's just not the law. But it's not the same case. And the point is they're so dissimilar, frankly, that bringing that in, that's not what happened here. From the moment he saw the package, Mr. Kerr said, I'm delivering this to someone  That's what he said. There's no dispute that's what he said. There's no dispute that that delivery would have occurred on a porch, which was about 40 feet or 50 feet away from where that transaction had. There's no dispute that before they allowed Mr. Kerr to fulfill his intention and move that package to that location, they interdicted it and engaged in all that we've heard they engaged in. So it's not the same case. It's not the same case. By the courier who says he's going to deliver it to somebody. You don't have to wait until he delivers it to a person. The courier had the package to begin with in all the cases you're talking about. My client didn't have it to begin with. They had it to begin with. They had it. Sure. With his own name. Okay. Many people would not sign for a package that is not theirs. He's made clear. The question is whether that's reasonable suspicion. Otherwise, are you suggesting that what they, if he had said, excuse me, I have an obligation to leave, they should have let him leave? No, because then he would have taken the package. No, no, no, no. No, that's not. All right. Thank you very much. Thank you.